See also, Bkrtcy., 25 B.R. 377; 25 B.R. 391.

In re MORRISTOWN LINCOLN–MER-CURY, INC., Debtor.

HAMILTON BANK OF MORRISTOWN, Plaintiff,

v.

FIRST STATE BANK OF PINEVILLE, KENTUCKY, Howard W. Sullivan, et al., Defendants.

Bankruptcy No. 3–81–01889.
Adv. No. 3–82–0419.

United States Bankruptcy Court, E.D. Tennessee.

Oct. 14, 1982.

Frank P. Cantwell, Jr., Capps, Foutch & Cantwell, Morristown, Tenn., for plaintiff.

Kenneth E. Morrow, Morrison, Morrison & Morrow, Knoxville, Tenn., W. Henry Lawson, Pineville, Ky., for defendant First State Bank of Pineville, Kentucky.

Howard W. Sullivan, pro se.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This controversy involves the respective rights of the Hamilton Bank of Morristown (Hamilton Bank) and the First State Bank of Pineville, Kentucky (First State Bank), in a 1980 Lincoln Towne Car. Both Hamilton Bank and First State Bank concede that Howard W. Sullivan purchased the vehicle in the ordinary course of business from the debtor, Morristown Lincoln-Mercury, Inc. Tenn.Code Ann. § 47–9–307 (1979).[1]

The plaintiff Hamilton Bank filed this adversary proceeding against the First State Bank of Pineville, Kentucky, Morristown Lincoln-Mercury, Inc. (the debtor), Richard Stair, Jr. (Trustee), and Howard W. Sullivan, seeking to have this court determine the rights of the parties in and to the 1980 Lincoln Towne Car. The defendant Morristown Lincoln-Mercury, Inc. and the defendant Howard W. Sullivan did not file answers; however, Mr. Sullivan did appear and testify at the trial of this cause on the merits held on July 13, 1982.[2]

On August 6, 1981, Mr. Sullivan purchased the 1980 Lincoln Towne Car which is the subject of this dispute from Morristown Lincoln-Mercury, Inc. Mr. Sullivan testified that he was in need of a new car and that he contacted Ronald Johnson, Vice-President of the debtor, who showed him the vehicle which he decided to buy. The terms of the transaction were the trade-in of a Chrysler New Yorker valued at $7,037.50, a down payment of $4,000.00 cash, and the balance financed through a retail installment contract amounting to $4,247.00. A copy of Mr. Sullivan's personal check in the amount of $4,000.00 for the down payment was introduced at the hearing along with the retail installment contract dated August 6, 1981. Mr. Sullivan testified that he had never had any dealings with the debtor prior to that transaction, that he had no knowledge of any security

interest in the vehicle, and that he had never received a certificate of title to the vehicle, although he had applied for title on October 26, 1981, at the Office of the County Court Clerk of Hamblen County (Ex. # 3). This application shows the Hamilton Bank as the first lienholder. Sullivan further testified that he had been making payments to the Hamilton Bank pursuant to the retail installment contract and that he had made all payments except two. He also testified that he desired to keep the vehicle.

Mr. Louis Jarvis, Installment Loan Officer of the Hamilton Bank, testified that the Bank purchased the Sullivan retail installment contract from the debtor, Morristown Lincoln-Mercury, Inc., that the Bank had advanced monies to the debtor pursuant thereto, that the transaction was carried out in the normal course of business in that a credit check had been conducted on Mr. Sullivan, that his credit had been approved, and that the retail installment contract had been purchased by the Bank without any personal contact with Mr. Sullivan. Mr. Jarvis also testified that the Bank was unaware of any problem concerning the certificate of title to the vehicle until several months had passed. Hamilton Bank did not receive the certificate of title as it normally did when similar transactions were involved.

The defendant First State Bank introduced into evidence a copy of a retail installment contract (Ex. # 4) dated February 22, 1980, executed by Morristown Lincoln-Mercury, Inc., indicating that Morristown Lincoln-Mercury, Inc. had sold the vehicle to itself, Morristown Lincoln-Mercury, Inc., and had financed the vehicle with the First State Bank in the amount of $16,200.00. This retail installment contract, dated February 22, 1980, was executed prior to the time Mr. Sullivan purchased the vehicle and executed the retail installment con-

---

1. *Protection of buyers of goods.*—A buyer in ordinary course of business ... other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even

though the security interest is perfected and even though the buyer knows of its existence.

2. The Trustee, Richard Stair, Jr., asserts no interest in the vehicle.

tract purchased by the Hamilton Bank. A certificate of title showing Morristown Lincoln-Mercury, Inc. as the owner and the First State Bank of Pineville, Kentucky, as the first lienholder on the vehicle (Ex. # 5) was also introduced into evidence.

■ A "buyer in the ordinary course of business,"[3] as a general rule, purchases "free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Tenn.Code Ann. § 47–9–307 (1979); *Correria v. Orlando Bank and Trust Co.*, 235 So.2d 20, 7 U.C.C.Rep.Serv. (Callaghan) 937 (Fla.Dist.Ct.App.1970). The competing banks have conceded that Sullivan purchased the 1980 Lincoln Towne Car in the ordinary course of business from the debtor, which was irrefragably in the business of selling automobiles. The express terms of the statute mandate a finding that Sullivan purchased the vehicle free of any interest of First State Bank even though that bank's lien was noted on the certificate of title covering the used automobile. The fact that Sullivan did not receive a certificate of title at the time of the purchase of the used automobile does not require the court to find that his purchase of the vehicle was in bad faith or that he is not entitled to the protection of a buyer in the ordinary course. *Couch v. Cockroft*, 490 S.W.2d 713 (Tenn.Ct.App.1972), *cert. denied.* Sullivan purchased the vehicle free of the security interest of First State Bank since that security interest had been created by "his seller," namely, Morristown Lincoln-Mercury, Inc.

■ The financing by First State Bank of the transfer of the 1980 Lincoln Towne Car by the debtor to itself is analogous to an entrustment of goods to a merchant dealing in goods of like kind. Tenn.Code Ann. § 47–2–403(2) (1979) enacts: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." First State Bank certainly realized that its secured debtor might very likely sell the vehicle since the debtor was a merchant who sold automobiles.

First State Bank is charged with the knowledge of the protection afforded by Tenn.Code Ann. § 47–9–307 (1979). The Bank must release its lien and surrender the certificate of title on the disputed vehicle to the purchaser, Mr. Sullivan.[4]

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

3. This term is statutorily defined to mean "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . ." Tenn.Code Ann. § 47–1–201(9) (1979).

4. The release of the lien of the First State Bank leaves in full force and effect the lien of the plaintiff the Hamilton Bank of Morristown.